# Willoughby *v.* Birmingham Railway, Light & Power Co.

## *Wrongful Ejection of Passenger.*

(Decided November 12, 1914. Rehearing denied December 15, 1914. 66 South. 887.)

1. *Carriers; Ejection; Passenger; Instructions.*—Where the action was for a wrongful ejection, and the case was tried on the theory of the refusal of the conductor to accept a tender of cash fare for the remainder of the passage, and there was no dispute that plaintiff's transfer was not good for further transportation, plaintiff cannot complain of an instruction which assumed the invalidity of the transfer as good for further carriage.

2. *Same.*—Where the complaint contains a count for wrongful ejection, and one for assault and battery, plaintiff cannot complain of a charge asserting that if plaintiff refused to pay his fare, the conductor had a right to eject him, using no more force than necessary,

as ignoring plaintiff's right to recover, though ejection was warranted if more force was used than is necessary; plaintiff's duty being to request an explanatory charge if the charge was deemed misleading.

3. *Same; Transfer; Right to Demand.*—The right to demand a transfer does not exist until the fare is paid, and where a passenger offered to exchange his fare for a transfer, and demanded that the conductor get the transfer ready before he would pay his fare, his ejection by the conductor was not wrongful.

APPEAL from Jefferson Circuit Court.

Heard before Hon. E. C. CROWE.

Action by S. E. Willoughby against the Birmingham Railway, Light & Power Company for damages for ejection and assault and battery. Judgment for defendant, and plaintiff appeals. Affirmed.

This action is for the alleged wrongful ejection of plaintiff, who is appellant here, from one of the defendant's street cars, and for an assault and battery alleged to have been committed on him.

The plaintiff boarded the car in question at Ensley for Birmingham via the South Ensley car line—on which the car he so boarded was—and gave the conductor, as the latter passed through the car collecting fares, a transfer which plaintiff had received from the conductor on the North Ensley car line while a passenger on that line. Under the rules and regulations of the defendant company, this transfer was good for transportation only as far as Rising Station. The conductor, who accepted from plaintiff the transfer, informed him that it was good only to Rising Station, and when the car reached the latter point exacted of plaintiff, if he wished to continue the journey to Birmingham, five cents additional—the regular fare from Rising Station to Birmingham.

At this point the evidence as to what took place is somewhat in conflict. The plaintiff, who was the only witness for himself, testified, so far as is material to the questions considered in the opinion, as follows:

[Willoughby v. Birmingham Railway, Light & Power Co.]

"A short time before we reached Rising Station, the conductor came and asked me if I didn't give him a transfer when I got on in Ensley, and I told him, 'Yes,' and he said, 'We'll soon be to the end of your trip, and you will have to pay more money if you go to Birmingham.' * * * I remarked that that was funny, that I had not seen any such ruling as that. * * * When we reached Rising Station, he says: 'Here is your getting-off place. Do you want to get off here or pay more money?' I says: 'I don't want to stop here. Before I will be put off of the car I will give you more money.' And I reached in my pocket and took out a nickel and held it so he could see it, and I says: 'Here is your money. You get my transfer ready [at Birmingham], I want to catch the East Lake line.' He made no attempt then to get the transfer ready, but says, 'Give me the money or get off.' I said, 'You get my transfer ready and I will exchange this money for it; get it ready. I want to be sure to catch that car' [meaning the East Lake car after they reached Birmingham]."

On cross-examination the plaintiff testified:

"I stated to the conductor that I did not know that the transfer was good only to Rising Station. I finally took a nickel out and held it up and told the conductor that I would pay him the fare if he would give me a transfer. I told him to get his transfer ready and I would give him the nickel when he gave me the transfer. I told him to get his transfer ready and I would exchange the nickel for it. I did not tell him I would not give him the nickel unless he gave me the transfer first. * * * I did not give the conductor the nickel, but I held it out. I did not get off of my accord—not by a long sight. I got down between the seats and held to the seats, and still held the money out where he could see it. * * * I had a pretty good hold on the

seat.  I did not mean to be put off there if I could help it; there was more of them [the conductor and the motorman, whom he had called to assist in the ejection] than there was of me, and stouter ones too.  I am a pretty stout man and gave them the best I had in the way of holding.  *  *  *  The two [the conductor and motorman] forcibly ejected me from the car and dragged me over the top of the seats and injured my leg below the knee in pulling me over the seats, and gave me a shove out of the door on the frozen ground."

So far as appears, however, he landed on his feet and did not even fall.

The evidence for the defendant, which consisted of the testimony of the conductor and of two of the passengers on the car, tended to show that the plaintiff, after the mentioned dispute between him and the conductor as to whether he was required to pay more fare, finally held out a nickel in his hand, as testified to by him, but declined to let the conductor have it unless the conductor would first give him (the plaintiff) a transfer from Birmingham to East Lake, and that the conductor told him he could not give him the transfer until he had paid the fare.  The evidence for defendant further tended to show that in ejecting the plaintiff no more force was used than was necessary; that the conductor and the motorman took hold of the plaintiff by the latter's arms, and, pulling him loose from the seats, led him on out the door of the car.

Charges 1 and 2 refused to the plaintiff are as follows:

(1) The court charges the jury that if they are reasonably satisfied from all the evidence  that the plaintiff offered to exchange his fare for a transfer, and the conductor refused to make the exchange, and ejected the plaintiff, your verdict should be for the plaintiff.

(2) The court charges the jury that if they believe from all the evidence that the conductor of the defendant ejected the plaintiff from the car, after he had offered to exchange his fare for a transfer, which exchange said conductor refused to make, then such ejection would be a wrongful ejection.

The foregoing statement of the case, with what ap pears in the opinion, will be sufficient to an understanding of the questions there decided.

HORACE C. WILKINSON, and HARSH & FITTS, for appellant. The transfer must be construed most strongly against the company.—6 Cyc. 573; 43 L. R. A. (N. S.) 587. Defendant could not, by some regulation unknown to the passengers, limit the use of the transfer and deprive plaintiff of rights if the transfer contained no notice of such limitations.—2 Hutchinson on Carriers, sec. 1077; 143 U. S. 60; 7 Md. 510; 45 L. R. A. 112; 90 S. W. 381. It was for the jury to say whether or not there was a general custom of defendant company to carry passengers on transfers without the payment of an additional fare.—*Humphries v. Ill. Cent.*, 12 South. 155. Plaintiff was not bound by some undisclosed rule of defendant company to the effect that the transfer was good only as far as Rising Station.—59 L. R. A. 350; 31 N. W. 544. Under these authorities the court erred in giving to the jury defendant's charge 1. The court also erred in refusing charge 1 requested by plaintiff.—23 N. E. 482; 38 Cyc. 153; 6 L. R. A. 562; 39 N. Y. 481; 7 N. W. 188; *Wilhite v. Ryan*, 66 Ala. 106. The court erred in refusing to sustain plaintiff's objection to the question relative to an alleged rule limiting the use of transfers on the South Ensley line.—*K. C. M. & B. v. Higdon*, 94 Ala. 286; *Armstrong v. Montgomery St. Ry.*, 123 Ala. 233; *Huffman's Case*, 76 Ala.

492; *L. & N. v. Bizzell,* 131 Ala. 429; *So. Ry. v. Lynn,* 128 Ala. 297; *McGee & Fink v. Reynolds,* 117 Ala. 413.

TILLMAN, BRADLEY & MORROW, and CHARLES E. RICE, for appellee. The appellant was not entitled to a transfer until he paid his fare, and if he refused, the conductor had a right to eject him.—*L. & N. v. Johnson,* 92 Ala. 204; *M. & C. Ry. Co. v. Benson,* 8 Ala. Am. Neg. cases, 623. The appellee undoubtedly had the right to make reasonable rules for the issuing of transfers.— *A. G. S. v. Carmichael,* 90 Ala. 19; *Manning v. L. & N.,* 95 Ala. 392. Counsel discuss other assignments of error in the light of these authorities with the insistence that no prejudicial error intervened.

THOMAS, J.—The facts sufficient, with what we here say, to an understanding of the case, appear in the statement of facts.

The rulings of the trial court relating to the admission of evidence, which are assigned as error, will not be considered, as the only effect of all these rulings was merely to let in evidence that tended to establish a fact which appellant's counsel on the trial admitted in open court, and that was that the transfer, which plaintiff gave defendant's conductor on boarding the car at Ensley from which he was afterwards ejected at Rising Station, was good for transportation only as far as said Rising Station, and not good all the way to Birmingham—plaintiff's destination. If the transfer mentioned was good beyond Rising Station, then the conductor had no right to eject the plaintiff at Rising Station, whether he offered to pay further fare or not; but, on the contrary, if the transfer was not good beyond that point, then the conductor had a right, of course, to eject the plaintiff there unless he paid or tendered further

fare. Appellant's counsel, during the progress of the trial and in open court, stated, in response to a direct inquiry, that the plaintiff sought to recover, not on the ground that he was not allowed to ride to Birmingham on the transfer, but on the ground that the conductor did not take the nickel offered him by plaintiff at said Rising Station for further fare and for a new transfer as then demanded by plaintiff, but ejected him and assaulted and beat him after such offer and demand. The fact of the invalidity of the transfer beyond Rising Station was not therefore in dispute, but was practically admitted; consequently, we are relieved of the necessity of reviewing the rulings of the trial court in letting in the evidence tending to show such fact, because, even granting as true what is here contended by appellant, that the evidence so let in was not the best evidence of the fact, the error in letting it in was without injury—the fact itself having been admitted. So that, in considering this case, we are to assume as true what was, to all practical intents and purposes, admitted, and that is that the transfer which plaintiff gave the conductor on boarding the car at Ensley was good only as far as Rising Station, and that, after reaching such point, if the plaintiff desired to remain on the car he was under duty to tender or pay additional fare.

In the light of such admission and of the evidence, the court will likewise not be put in error for giving charge 1 requested by the defendant, although it is true, as contended, that it assumes that the plaintiff was under duty to pay another fare at Rising Station in the event he desired to continue the journey to Birmingham. The law does not permit a party to invite by his admissions in open court the lower court to a particular course of action, and then on appeal reverse that court

for doing the thing it was impliedly or expressly invited to do.

The only other criticism of the charge is to the effect that it ignores the question of whether or not, in the ejection of plaintiff, more force was used than was necessary. There was a count in the complaint based on the wrongful ejection of the plaintiff, and also a count based on assault and battery. Under the first, the plaintiff could recover in the event his ejection was wrongful, both for the wrongful ejection and for the excessive force, if any, used in accomplishing it; but, if his ejection was not wrongful, then he could not recover at all under that count, although the conductor in ejecting him may have gone beyond what was necessary to that end and used excessive force, because, in such latter case, only the excessive force, and not the ejection, was wrongful. Under the second named of the counts, the plaintiff had a right to recover, even though his ejection was not wrongful, but rightful, provided the conductor, in effecting it, used excessive force; for in such event the conductor was guilty of an assault and battery, to the extent of the excessive force used. Hence, under the pleading—the plaintiff, as seen, having a right to recover on either of two theories—a charge authorizing a finding against the plaintiff should, as contended, in order to be correct, hypothesize a belief by the jury of a state of facts negativing not only a wrongful ejection but also the use of excessive force. The charge in question, with the part last criticized in italics, reads as follows:

"If you are reasonably satisfied from the evidence that, after the said car reached Rising Station, plaintiff refused to pay fare until the conductor first gave him a transfer, then the court charges you that the conductor had a right to eject the plaintiff, *using no more*

*force than necessary, and you could not find for the plaintiff."*

While the meaning of the charge is not perhaps as clear as it might be in the particulars and as to the point made the basis of the last criticism mentioned, yet we are of opinion that the court should not be reversed for giving it. Viewing it fairly, as we should, and not hypercritically, we interpret it to mean, and are of opinion that the jury would naturally understand it to mean, as follows:

"If you are reasonably satisfied from the evidence that, after the said car reached Rising Station, plaintiff refused to pay fare until the conductor first gave him a transfer, then the court charges you that the conductor had a right to eject the plaintiff, and, if he used no more force than necessary, you could not find for the plaintiff."

If the plaintiff was apprehensive that the jury might take a different view of the charge and erroneously conclude from it, as here contended, that if the ejection was rightful the jury were authorized to find against plaintiff, notwithstanding they might believe excessive force was used in ejecting him, the plaintiff should have requested an explanatory charge.

The court likewise committed no error in refusing charges 1 and 2 requested by the appellant. When the car on which plaintiff, who was en route to Birmingham, was riding, reached Rising Station, the transfer which plaintiff gave the conductor on boarding the car at Ensley ceased (admittedly, as seen) to be valid; and, if the plaintiff desired to remain on the car and to continue the journey to Birmingham and to receive a transfer to East Lake from Birmingham, he was under duty to pay the regular fare (five cents) from Rising Station to Birmingham when called upon for it by the con-

ductor. The uniform rule established by common carriers of persons—the reasonableness and justness of which is beyond question, and which rule is so well known as to be a matter of common knowledge—requires passengers to pay their transportation in advance of the journey. Payment, when called upon for it on the car, is therefore a prerequisite or condition precedent to the right to remain on the car for transportation. If payment must precede the right to remain on the first car for transportation, then it follows necessarily that it must precede the right to be entitled to a transfer from that car to another car for the completion of the journey so commenced on the first car. The right to a transfer cannot in the nature of things precede, but flows as an incident to, the first right, which must be first secured, and which is secured only by the payment of the fare in advance when demanded.

The evidence for the defendant tended to show that the plaintiff, after the car reached Rising Station and the conductor called on him for the fare to Birmingham, declined to pay the fare unless the conductor would first give him a transfer from Birmingham to East Lake; while the evidence for the plaintiff tended to show, even when construed most favorably to him, that he held up a nickel and offered to deliver it to the conductor if at the same time the conductor would deliver to him a transfer. We are not of opinion, for reasons stated, that the plaintiff had the right to couple either of these conditions with his tender of fare. He should have paid the fare, which would have entitled him to remain on the car, and to a transfer, if demanded, which was an incident to the first right, and which, if the conductor had given at any time before the plaintiff disembarked from the car at the transfer station,

would have met all the requirements of the situation, and which, if he had not, the law affords ample redress for the wrong. Public service corporations, in order to meet the objects of their being, and thereby serve the public convenience, have to conduct their business according to some fixed rules and regulations, which if reasonable should be complied with by the public. They cannot, consistently with these objects, conform their operations or methods of business to the whim and caprice of every person they may be required to serve. If so, the larger portion of those desiring to be served could never get served.

We find no error in the record, and the judgment appealed from is affirmed.

Affirmed.

## *Wrongful Ejection of Passenger.*

